UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENAISSANCE DEVELOPMENT CORP.,<br><br>Plaintiff,<br><br>v.<br><br>BUCA V, LLC, BUCA, INC., BUCA RESTAURANTS, INC., BUCA C, LLC, AND PLANET HOLLYWOOD INTERNATIONAL, INC.,<br><br>Defendants<br><br>and<br><br>FIRST DATA CORPORATION,<br><br>Reach-And-Apply Defendant | CIVIL ACTION NO. 18- |

## VERIFIED COMPLAINT

Plaintiff, Renaissance Development Corp. (the "Lessor"), commences this action against defendant, Buca V, LLC, for breach of a commercial lease agreement, and against the other defendants for breach of their obligations to the Lessor under a forbearance agreement and certain guaranties. As of the date of this complaint, the total amount owed by the defendants, jointly and severally, to the Lessor is no less than $898,000, plus contractual interest at the rate of 18% per year, plus attorneys' fees as provided in the applicable written agreements.

## PARTIES

1.      The Lessor is a corporation organized under the laws of Rhode Island, with a principal place of business in Cranston, Rhode Island. The Lessor is duly registered to do business in Massachusetts, and is the owner of the premises located at 7 Boston Turnpike, Shrewsbury,

1

Massachusetts (the "Shrewsbury Premises") and the premises located at 353 Highland Avenue, Seekonk, Massachusetts (the "Seekonk Premises").

2. Defendant, Buca V, LLC d/b/a Buca Di Beppo (the "Lessee"), is a limited liability corporation organized under the laws of Florida, with a principal place of business in Orlando, Florida. The Lessee is duly registered to do business in Massachusetts and, until 2015, operated a restaurant with a usual place of business located at the Shrewsbury Premises.

3. Defendant, Buca, Inc. ("Buca"), is a corporation organized under the laws of Minnesota, with a principal place of business in Orlando, Florida. Buca is a former lessee of the Shrewsbury Premises and a guarantor of the Lessee's obligations under the commercial lease agreement described below.

4. Defendant, Buca Restaurants, Inc. ("BRI"), is a corporation organized under the laws of Minnesota, with a principal place of business in Orlando, Florida. BRI is a former lessee of the Shrewsbury Premises and a guarantor of the Lessee's obligations under the commercial lease agreement described below.

5. Defendant, Buca C, LLC ("Buca C"), is a limited liability corporation organized under the laws of Florida with a principal place of business in Orlando, Florida. Pursuant to the Forbearance Agreement (defined below), Buca C is liable for the Lessee's obligation under the commercial lease agreement described below.

6. Defendant, Planet Hollywood International, Inc. ("Planet Hollywood"), is a corporation organized under the laws of Delaware, with a principal place of business in Orlando, Florida. Planet Hollywood is a guarantor of the Lessee's obligations under the commercial lease agreement described below.

7. Reach-And-Apply Defendant, First Data Corporation ("First Data"), upon information and belief, is a corporation organized under the laws of Delaware, with a place of business at 5565 Glenridge Connector NE, Suite 2000, Atlanta, Georgia.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the Lessor and the defendants are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over the defendants pursuant to the Massachusetts Long Arm Statute. The Lessee and BRI are registered to do business in Massachusetts. All defendants transacted systematic and continuous business activities in Massachusetts directly related to the claims in this action, and all defendants contractually agreed that Massachusetts law governs this dispute.

10. Venue in this District is proper pursuant to 28 U.S.C. § 1391, in that the events giving rise to Lessor's claims occurred in this district and the defendants transacted business in this district.

## FACTS RELATED TO LEASE, JUDGMENT AND FORBEARANCE AGREEMENT

11. The Lessor and the Lessee are parties to a Commercial Property Lease dated February 2, 2001 (the "Original Lease"), as amended by the Amendment to Lease dated August 24, 2010 (the "First Amendment") and the Second Amendment to Lease dated September 15, 2014 (the "Second Amendment"). The Original Lease, the First Amendment and the Second Amendment are collectively referred to as the "Lease," and copies are attached hereto as **Exhibits A, B & C**, respectively.

12. The demised premises under the Original Lease consisted of both the Shrewsbury Premises and the Seekonk Premises. Through a series of transactions between 2002 and 2014, including but not limited to the First Amendment and the Second Amendment, the Seekonk Premises was released from the Lease.

13. Simultaneously with the execution of the Second Amendment on September 15, 2014, the Lessor entered into a new lease of the Seekonk Premises with Plaza Azteca Seekonk, Inc. which is not at issue in this Complaint.

14. As an inducement to the Lessor's agreement to lease the Seekonk Premises to Plaza Azteca, Buca and BRI (collectively, the "Buca Guarantors") executed a written guaranty of the Lessee's

obligations to the Lessor under the Lease, as well as the obligations of Plaza Azteca under the new lease of the Seekonk Premises. A true copy of the guaranty is attached hereto as **Exhibit D**.

15. Two months after signing the Second Amendment, the Lessee ceased making payments to the Lessor under the Lease with respect to the Shrewsbury Premises. The Lessee eventually ceased all business operations at the Shrewsbury Premises without permission from the Lessor.

16. On February 20, 2015, the Lessor filed an action against the Lessee and the Buca Guarantors in the United States District Court for the District of Massachusetts, C.A. No. 1:15-CV-10463, for breach of their obligations with respect to the Lease (the "First Litigation").

17. On November 30, 2015, the Court in the First Litigation (Sorokin, J.) entered judgment in favor of the Lessor and against the Lessee and the Buca Guarantors, jointly and severally, in the amount of $686,779.65. The Lessee and the Buca Guarantors appealed the judgment.

18. On or about April 1, 2016, the parties to the First Litigation settled their dispute by entering into the "Forbearance Agreement," a true copy of which is attached hereto as **Exhibit E**. Among other things, the Forbearance Agreement provided for the payment in full over time of the judgment in the First Litigation. The Forbearance Agreement also reduced the monthly rent for the Shrewsbury Premises from $36,299.23 to $25,000; "provided, however, that if [the Lessee and the Buca Guarantors] default on any of their obligations to [the Lessor] under this Forbearance Agreement or the Lease, then (a) the [Lessor's] conditional agreement to accept [$25,000] in lieu of [$36,299.23] shall be void *ab initio*, and (b) [the Lessee and the Buca Guarantors] shall be liable to [the Lessor] for the difference between [$36,299.23] and [$25,000] from April 1, 2016 until the date of default."

19. The Forbearance Agreement also granted the Lessor certain rights in the event of a default under the Lease, such as the right to obtain a reach-and-apply injunction with respect to the Lessor's right to receive payments from its credit card processor, First Data.

20. The Lessor and the Buca Guarantors are wholly-owned by Planet Hollywood, which is a publicly-traded company. Pursuant to the Forbearance Agreement, Planet Hollywood and another

4

affiliate of the Lessee and the Buca Guarantors, Buca C, executed a guaranty of the Lessee's obligations to the Lessor under the Lease and the Forbearance Agreement. A copy of the guaranty is attached hereto as **Exhibit F**.

## FACTS RELATED TO BREACHES OF LEASE AND FORBEARANCE AGREEMENT

21. Pursuant to Sections 5.5 and 6.1 of the Lease, the Lessee is obligated to maintain and repair the Shrewsbury Premises (including the roof and parking areas), and to make all repairs, alterations, additions, or replacements to the Shrewsbury Premises required by any order or regulation of local or state authorities. Section 5.5(g) of the Lease also provides that the Lessee may not vacate the Shrewsbury Premises for more than six months.

22. By the early fall of 2016, the Lessor had been contacted repeatedly by the Town of Shrewsbury regarding the Lessee's failure to perform necessary repairs and maintenance to the Shrewsbury Premises. The Building Inspector specifically informed the Lessor about fire and safety issues, the lack of permits, and the Lessee's failure to make the vacant building secure and weather tight.

23. By letter dated October 28, 2016 (the "Default Letter"), the Lessor notified the Lessee, the Buca Guarantors, Buca C, and Planet Hollywood that they were in default of their respective obligations with respect to the maintenance and repair of the Shrewsbury Premises. A copy of the Default Letter is attached hereto as **Exhibit G**.

24. The Lessee's failure to promptly cure these defaults caused the Town of Shrewsbury to send a formal notice to the Lessor dated January 30, 2017 (the "Code Violation Notice") identifying numerous code violations at the Shrewsbury Premises. The Lessor promptly forwarded the notice to the Lessee, the Buca Guarantors, Buca C, and Planet Hollywood, but little or no progress was made to address the code violations.

25. After months of empty promises, on August 11, 2017, the Lessor sent another notice of default (the "Second Default Letter") to the Lessee and its affiliates regarding the condition of the Shrewsbury Premises and demanded that they perform necessary maintenance and repairs in accordance

with the Lease. A copy of the Second Default Letter is attached hereto as **Exhibit H**. Such Second Default Letter included a 21-item list of specific matters that needed to be addressed by the Lessee in the short- and long-term.

26. Once again, the Lessor's Second Default Notice was followed by more empty promises on the part of the Lessee and its affiliates. The Lessee even provided the Lessor with estimates from contractors to perform $571,000 worth of necessary repairs, and represented that certain work would commence by November 2017, but the work actually performed involved merely landscaping and minor cosmetic repairs.

27. On January 10, 2018, the Lessor performed an inspection of the Shrewsbury Premises and confirmed that the Lessee remained in default of its repair and maintenance obligations under the Lease.

28. In addition to the Lessee's default of its repair and maintenance obligations, the Lessee has breached Section 5.5(g) of the Lease by vacating the Shrewsbury Premises for more than six months.

## COUNT ONE
## BREACH OF LEASE
(v. Lessee)

29. The Lessor repeats and incorporates by reference the above allegations as if fully set forth herein.

30. The Lessee is in default of its obligations to the Lessor under the Lease by failing to perform necessary maintenance and repairs, and by vacating the Shrewsbury Premises for more than six months.

31. Pursuant to Section 15.1 of the Lease, the Lessor notified the Lessee in writing of its defaults under the Lease, and gave the Lessee more than 10 days to cure its defaults. As of the date of this Complaint, the Lessee has failed to cure its defaults in accordance with the terms of the Lease.

32. As a result of the uncured defaults, and in accordance with the Forbearance Agreement, the Lessor's agreement to discount the monthly rent from $36,299.23 to $25,000 is void *ab initio,* and the Lessee is responsible for the full amount of the rent from April 1, 2016, through the end of the term of the Lease on May 31, 2020. As of August 1, 2018, the difference between the amount paid and the amount owed was $327,677.67.

33. In addition to the unpaid rent, the Lessee is obligated to pay all amounts necessary to perform the repair and maintenance items listed on **Exhibit I** hereto, which is currently estimated at no less than $571,000.

34. Pursuant to Section 15.3 of the Lease, the Lessor is entitled to recover all amounts owed by the Lessee under the Lease from the date of default through the expiration of the term of the Lease on May 31, 2020, plus all courts costs, interest at the rate of 18% per year, and reasonable attorneys' fees.

WHEREFORE, Plaintiff, Renaissance Development Corp. demands judgment against Defendant, Buca V, LLC d/b/a Buca Di Beppo, for all amounts due under the Lease from the date of default through the expiration of the term of the Lease on May 31, 2020, including, but not limited to, $327,677.67 for Lease payments owing through August 1, 2018 and not less than $571,000.00 for maintenance and repairs, plus all courts costs, interest at the rate of 18% per year, and reasonable attorneys' fees.

## COUNT TWO
## BREACH OF 2014 GUARANTY
### (v. Buca and BRI)

35. The Lessor repeats and incorporates by reference the above allegations as if fully set forth herein.

36. The Lessee is in default of its obligations to the Lessor under the Lease by failing to pay rent, and by failing to maintain and repair the Shrewsbury Premises.

37. Under the 2014 Guaranty, Buca and BRI unconditionally guaranteed the obligations of the Lessee under the Lease.

38. By virtue of the Default Letter, Code Violation Notice and Second Default Letter, the Lessor notified Buca and BRI of the Lessee's defaults of its obligations under the Lease. As of the date of this Complaint, the Buca Guarantors have failed to make any payments to the Lessor in accordance with the terms of the Lease or the Guaranty.

39. Pursuant to the 2014 Guaranty, the Lessor is entitled to recover from the Buca Guarantors, jointly and severally, all amounts due from the Lessee under the Lease from the date of default through the expiration of the term of the Lease on May 31, 2020, plus all courts costs, interest at the rate of 18% per year, and reasonable attorneys' fees.

WHEREFORE, Plaintiff, Renaissance Development Corp., demands judgment against Defendant, Buca, Inc. and Defendant, Buca Restaurants, Inc., jointly and severally, for all amounts due under the Lease from the date of default through the expiration of the term of the Lease on May 31, 2020, including, but not limited to, $327,677.67 owing for Lease payments through August 1, 2018 and not less than $571,000.00 for maintenance and repairs, plus all courts costs, interest at the rate of 18% per year, and reasonable attorneys' fees.

### COUNT THREE
### BREACH OF 2016 GUARANTY
(v. Planet Hollywood and Buca C)

40. The Lessor repeats and incorporates by reference the above allegations as if fully set forth herein.

41. The Lessee is in default of its obligations to the Lessor under the Lease by failing to pay rent, and by failing to maintain and repair the Shrewsbury Premises.

42. Under the 2016 Guaranty, Planet Hollywood and Buca C unconditionally guaranteed the obligations of the Lessee under the Lease.

43. By virtue of the Default Letter, Code Violation Notice and Second Default Letter, the Lessor notified Planet Hollywood and Buca C of the Lessee's defaults of its obligations under the Lease.

As of the date of this complaint, Planet Hollywood and Buca C have failed to make any payments to the Lessor in accordance with the terms of the Lease or their guaranties.

WHEREFORE, Plaintiff, Renaissance Development Corp., demands judgment against Defendant, Planet Hollywood International, Inc. and Buca C, LLC, jointly and severally, for all amounts due under the Lease from the date of default through the expiration of the term of the Lease on May 31, 2020, including, but not limited to, $327,677.67 owing for Lease payments through August 1, 2018 and not less than $571,000.00 for maintenance and repairs, plus all courts costs, interest at the rate of 18% per year, and reasonable attorneys' fees.

## COUNT FOUR
### REACH and APPLY Pursuant to M.G.L. c. 214 §§ 3(6)(7)
(v. First Data)

44. The Lessor repeats and incorporates by reference the above allegations as if fully set forth herein.

45. Pursuant to Paragraph 7 of the Forbearance Agreement, the Lessee, Buca and BRI (referred to in such Forbearance Agreement and hereinafter referred to as the "Judgment Guarantors"), agreed that the Lessor would file a Reach and Apply civil action against such Judgment Guarantors' credit card processor, First Data, to secure their obligations under the Lease, the Judgment and the Forbearance Agreement.

46. Indeed, under Paragraph 7 of the Forbearance Agreement, the Judgment Guarantors agreed not to defend such Reach and Apply action, but rather to assent to the Lessor's motion for an equitable lien and sign all documents necessary to effectuate such equitable lien.

47. Accordingly, the Lessor has a contractual right under the Forbearance Agreement to an equitable lien securing monies controlled or held by First Data on behalf of the Judgment Guarantors in an amount not less than $898,677.67.

WHEREFORE, Plaintiff, Renaissance Development Corp., demands that this Honorable Court order that the assets of Defendants, Buca V, LLC d/b/a Buca Di Beppo, Buca, Inc. and Buca

Restaurants, Inc., in the hands of Reach-And-Apply Defendant, First Data Corporation, may be reached and applied by Lessor to satisfy the amounts owed by such Defendants to Lessor plus interest, costs and attorneys' fees and for such other relief as this Court deems just and proper.

## COUNT FIVE
## INJUNCTIVE RELIEF
### (v. First Data)

48. The Lessor repeats and incorporates by reference the above allegations as if fully set forth herein.

49. Pursuant to Paragraph 7 of the Forbearance Agreement, the Lessee, Buca and BRI (referred to in such Forbearance Agreement as the "Judgment Guarantors"), agreed that the Lessor would file a Reach and Apply civil action against First Data to secure the obligations of the Lessee, Buca and BRI under the Lease, the Judgment and the Forbearance Agreement.

50. Indeed, under Paragraph 7 of the Forbearance Agreement, the Lessee, Buca and BRI agreed not to defend such Reach and Apply action, but rather to assent to the Lessor's motion for an equitable lien and sign all documents necessary to effectuate such equitable lien.

51. Paragraph 7 of the Forbearance Agreement expressly provides that such equitable lien shall be substantially in the form attached to such Forbearance Agreement as "Exhibit C". "Exhibit C" to the Forbearance Agreement is an Order to be submitted to this court setting forth, *inter alia*, that First Data shall be ordered to withhold and segregate the sum of $1,200,000 from any current or future amounts owed to or held for the benefit of any of the Lessee, Buca, BRI, and Buca C (the "Attached Interest"), and be restrained (by virtue of a preliminary and permanent injunction) from indirectly paying, transferring, assigning or otherwise disposing of the Attached Interest pending further order of this court.

52. The Lessor has a likelihood of success on the merits as more fully set forth herein.

53. A reach and apply injunction is necessary to preserve the equitable, beneficial and/or ownership interests in the amounts owed by the Lessee, Buca and BRI to the Lessor.

54. The Lessor believes and therefore avers that it will be irreparably harmed if an injunction is not entered as it will be unable to otherwise preserve and subsequently enforce the judgment that it expects to obtain against by the Lessee, Buca, BRI and Buca C.

WHEREFORE, Plaintiff, Renaissance Development Corp., demands injunctive relief against Reach-And-Apply Defendant, First Data Corporation and those in active concert and participation with them ordering them to withhold and segregate the sum of $1,200,000 from any current or future amounts owed to or held for the benefit of any of the Lessee, Buca, BRI, and Buca C and be restrained from indirectly paying, transferring, assigning or otherwise disposing of the Attached Interest pending further order of this Court.

Respectfully Submitted,

Plaintiff,

RENAISSANCE DEVELOPMENT CORP.,

By Its Attorneys,

PARTRIDGE SNOW & HAHN, LLP

*/s/ Randall T. Weeks, Jr.*
Randall T. Weeks, Jr. (BBO #630326)
128 Union Street, Suite 500
New Bedford, MA  02740
(774) 206-8200
(774) 206-8210
rtw@psh.com

DATED: August 22, 2018

## VERIFICATION

I, Janice Mathews, state that I am Vice President of Plaintiff, Renaissance Development Corp. and hereby acknowledge that I have read the foregoing Verified Complaint. Based upon my personal knowledge and the books and records of Renaissance Development Corp. maintained in the ordinary course of Renaissance Development Corp.'s business, the allegations set forth therein are true, except those allegations made upon information and belief, which allegations I believe to be true.

_____
Janice Mathews

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In CRANSTON, in said County, on this 17TH day of AUGUST, 2018, before me, the undersigned notary public, personally appeared the within named Janice Mathews, as Vice President of Renaissance Development Corp., personally known to me to be the person whose name is signed on the preceding or attached document, and she acknowledged to me that she signed it voluntarily for its stated purpose and as her free act and deed.

_____
Notary Public
Print Name: GARY A. KACHADOURIAN
My Commission Expires: 4/7/19
Notary Identification Number: 4V776

3357022.1/MTBA-RTW